IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DENEEN JUSTICE,**         Case No. 1:17 CV 2395

    Plaintiff,

    v.         Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.         MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Deneen Justice ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 14). For the reasons stated below, the undersigned reverses the decision of the Commissioner, and remands the case for further proceedings.

### PROCEDURAL BACKGROUND

Plaintiff filed for SSI in February 2015, alleging a disability onset date of December 15, 2014. (Tr. 193). Her claims were denied initially and upon reconsideration. (Tr. 134-37, 140-41). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 144-45). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the

ALJ on September 14, 2016[1]. (Tr. 35-59). On October 27, 2016, the ALJ found Plaintiff not disabled in a written decision. (Tr. 17-28). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3); *see* 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff timely filed the instant action on November 15, 2017. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Plaintiff was born in December 1975, making her 39 years old on her application date. *See* Tr. 40. She had past work as a laundry aide, stock clerk, and as an office worker for a moving company. (Tr. 42-44). Plaintiff testified she was unable to work due to issues with comprehension (Tr. 47), and leg and foot pain which resulted in an inability to stand for long periods (Tr. 45).

Plaintiff had an eleventh-grade education. (Tr. 41). She had some difficulty reading but could perform simple mathematics. (Tr. 48).

Plaintiff did not see a mental health professional and did not take medications for mental health issues. (Tr. 48-49). The ALJ asked Plaintiff if she was diagnosed with an antisocial behavior disorder, to which she replied, "[t]hat's the first time I've heard about it[.]" (Tr. 48). Plaintiff testified to difficulty relating with others; she did not interact with other family members, had no friends, had no hobbies, and "hate[d] people". (Tr. 49). Plaintiff testified she never encountered any legal difficulties because of her inability to get along with others. (Tr. 53). However, Plaintiff noted that she often got aggravated with others around her in the grocery store. *Id*. Plaintiff testified she would "cuss them out" or try to "fight with them". *Id*.

---

1. Plaintiff initially attended a hearing before the ALJ on May 20, 2016. *See* Tr. 62-68. She attended without representation and, after a brief conversation with the ALJ, requested the hearing be postponed so she could obtain counsel. (Tr. 65-66).

Plaintiff lived with her mother in her mother's home. (Tr. 40). She grocery shopped for herself, cleaned, cooked meals, and did her laundry. (Tr. 49-50). In a typical day, Plaintiff drove her mother to appointments (if needed), tended to her personal care, and watched television. (Tr. 50-51).

*Function Report*

Plaintiff completed a Function Report in April 2015. (Tr. 235-42). There, she described her hobbies as watching television and playing on the computer. (Tr. 239). She would sometimes "sit around and talk", go out to eat, or go to the movies. *Id.* She noted she was unable to do anything physical with her friends due to leg pain. (Tr. 240). Plaintiff could pay attention "all the time," and followed written and spoken instructions "very well". *Id*. She reported getting along with authority figures "very" well, and handling stress "pretty" well. (Tr. 241). Plaintiff felt that she adapted to changes in the workplace "pretty fast." *Id*.

Relevant Medical Evidence[2]

Within the relevant period, Plaintiff treated with several providers for her physical impairments. *See generally* Tr. 294-688 (treatment records from January 2013 through July 2016). During her appointments, Plaintiff often presented as cooperative and pleasant and/or had a normal affect and mood. *See* Tr. 302, 311, 313, 342, 348, 360, 364, 414, 449, 492, 631.

In June 2015, Plaintiff attended a consultative examination with psychologist Amber Hill, Ph.D., at the request of the Division of Disability Determination. (Tr. 523-32). During the

---

2. Plaintiff alleged disability based on a screw and plate in her right ankle, being a "slow learner", high blood pressure, kidney stones, and sleep apnea. (Tr. 104-05, 120). Because Plaintiff challenges the ALJ's RFC determination only as it relates to mental limitations (Doc. 16, at 8-10), the undersigned summarizes only the medical evidence relevant to these claims. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in opening brief waived).

interview, Plaintiff reported she only communicated with her mother and had no other relationships. (Tr. 524). Plaintiff stated she did not participate in any activities due to pain in her legs and difficult walking. *Id*. She spent the majority of her day watching television. *Id*. Plaintiff reported that she attended special education classes throughout her school years, and had disciplinary issues including truancy. (Tr. 525). Plaintiff reported an arrest in 1997 for selling crack cocaine, but has never been court ordered into any drug treatment programs. *Id*. Plaintiff drank alcohol daily and smoked marijuana "every day 24/7" since she was eleven years old. (Tr. 526). Plaintiff also told Dr. Hill she only smoked marijuana "a couple times a week." *Id*.

Plaintiff reported no history of mental health problems or treatment. *Id*. When Dr. Hill asked if she was currently experiencing any mental health problems, Plaintiff replied "I don't know." *Id*.

On examination, Plaintiff was dressed appropriately and well groomed. (Tr. 527). She was "very irritated" with Dr. Hill's line of questioning. *Id*. Plaintiff had a coherent thought process, but it was not goal directed. (Tr. 528). She had an angry, irritable, and restricted affect. *Id*. Plaintiff's attention and concentration abilities were intact, and her overall intellectual functioning appeared within the "below average range". (Tr. 528-29). Dr. Hill diagnosed antisocial personality disorder, alcohol use disorder (moderate), and cannabis use disorder (moderate). (Tr. 529). Plaintiff's prognosis was "guarded" due to her lack of mental health and substance abuse treatment. *Id*.

Opinion Evidence

In June 2015, Dr. Hill proffered an opinion regarding Plaintiff's work-related mental abilities. (Tr. 530-32). She concluded Plaintiff could understand, remember, and carry out instructions, as evidenced by her performance during the mental status exam. (Tr. 530). She opined Plaintiff's general intelligence was within a "below average range of intellectual capability." *Id*.

Dr. Hill further opined that – based on her testing performance – Plaintiff could maintain attention and concentration, sufficiently to perform simple and multi-step tasks. (Tr. 531). She found Plaintiff had difficulty in her ability to maintain persistence and pace, consistent with someone who has antisocial personality disorder. *Id*. Dr. Hill found Plaintiff would be limited in her ability to respond appropriately to supervisors and coworkers based upon her irritable and aggressive presentation throughout the examination. *Id*. Finally, Dr. Hill opined Plaintiff was likely able to respond appropriately to work pressures. (Tr. 532). However, she noted Plaintiff was using "substances daily related to alcohol and almost daily use of marijuana." *Id*. Dr. Hill found Plaintiff's substance abuse in a work setting would limit her ability to respond appropriately to work pressures. *Id*.

In July 2015, State agency psychologist Joseph Edwards, Ph.D., reviewed Plaintiff's medical records and provided a mental residual functional capacity assessment. (Tr. 111-16). Dr. Edwards found Plaintiff had a "mild" restriction in activities of daily living; and "moderate" restrictions in social functioning and maintaining concentration, persistence, or pace. (Tr. 112). Dr. Edwards further opined Plaintiff was "not significantly limited" in her ability to carry out short simple instructions; perform activities on a schedule; maintain regular attendance; sustain an ordinary work routine without special supervision; make simple work-related decisions; ask questions or request assistance; maintain awareness of hazards in the workplace; travel or use public transportation; or set realistic goals. (Tr. 114-15). He found Plaintiff was "moderately limited" in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday without interruption from psychologically based symptoms; interact appropriately with the public; accept instruction and criticism from supervisors; get along

with coworkers or peers; maintain appropriate behavior or respond appropriately to changes in the work setting. *Id.* Dr. Edwards noted Plaintiff had the severe impairments of a personality disorder and alcohol and cannabis use disorders. (Tr. 115). He opined Plaintiff needed to work in a "relatively static setting without strict time or production demands." *Id.*

In November 2015, State agency psychologist Paul Tangeman, Ph.D., reviewed Plaintiff's medical records and concurred with Dr. Edwards's assessment. (Tr. 127-29).

VE Testimony

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 54-57. The ALJ asked the VE to consider a person with Plaintiff's age, education, and vocational background who was physically and mentally limited in the way in which the ALJ determined Plaintiff to be. (Tr. 55-56). The VE opined such an individual could not perform Plaintiff's past work, but could perform other jobs such as an office helper, electronic assembler, or a hand packager. *Id.*

ALJ Decision

In a written decision dated October 27, 2016, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date (February 13, 2015). (Tr. 19). She concluded Plaintiff had the severe impairments of: obesity, status-post right ankle fracture and open reduction internal fixation, right ankle arthroplasty and surgical repair with hardware and personality disorder. *Id.* The ALJ found these impairments (alone or in combination) did not meet or medically equal the severity of a listed impairment. (Tr. 20). The ALJ then set forth Plaintiff's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416. 967(b) except: she can lift up to twenty pounds occasionally, and ten pounds frequently, stand/walk approximately two hours and sit six hours of an eight-hour workday with normal breaks, occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel, crouch and crawl, occasionally push, pull, and use foot controls with the right lower extremity,

> must avoid all exposure to hazardous machinery, unprotected heights, and commercial driving, and the claimant requires the option to alternate between sitting and standing one to two minutes every hour without being off-task. She is further limited to frequent interactions with supervisors, co-workers and the public. She is limited to routine workplace changes.

(Tr. 21-22). The ALJ found Plaintiff was unable to perform past relevant work (Tr. 26); was defined as a "younger individual" on the application date; and had a limited education (Tr. 27). The ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy. *Id*. Thus, the ALJ found Plaintiff has not been under a disability since February 13, 2015 (the application date). (Tr. 28).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn

"so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

**STANDARD FOR DISABILITY**

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and

8

meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises a single argument in her brief: the RFC is unsupported due to the ALJ's failure to properly incorporate the mental limitations opined by the consultative and State agency psychologists. (Doc. 16, at 7-10). The Commissioner responds that the RFC is supported by substantial evidence. (Doc. 17, at 8-15). For the reasons discussed below, the undersigned reverses and remands the decision of the Commissioner.

A claimant's RFC is defined as "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(e)(1)(i). However, it must be supported by substantial evidence. In formulating the RFC, the ALJ is not required to adopt any physician's opinion verbatim. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment.").

Here the ALJ set forth mental limitations in her RFC, finding Plaintiff: "is further limited to frequent interactions with supervisors, co-workers and the public. She is limited to routine workplace changes." (Tr. 21-22). Plaintiff argues this RFC is unsupported by the record. In support of her argument, Plaintiff points to the only mental health evidence of record: (1) the report and opinion from the consultative examiner; and (2) and opinions of the State agency physicians. (Doc.

16, at 8-9). Plaintiff argues the mental RFC is directly in conflict with these opinions. *Id*. For the reasons stated below, the undersigned agrees and reverses the decision of the Commissioner.

First, the ALJ addressed the opinion of the consultative examiner, Dr. Hill, and gave reasons for the weight assigned:

> I gave partial weight to Dr. Hill's opinion to the extent that it was consistent with the above residual functional capacity findings. Specifically, I gave less weight to her limitations regarding social functioning because Dr. Hill based them partially on her alcohol and marijuana use and the claimant's suggest[ion] at that examination that she had reduced her use of these substances (Ex. C5F/5). Therefore, I did not find her alcohol use disorder and cannabis use disorder to be severe impairments.

(Tr. 25). Thus, the ALJ gave less weight to Dr. Hill's opinion regarding Plaintiff's social functioning limitations "because Dr. Hill based them partially on her alcohol and marijuana use and the claimant's suggest[ion] . . . that she had reduced her use of these substances." *Id*. The ALJ's analysis here is flawed on two fronts. First, Dr. Hill's opinion regarding Plaintiff's social functioning was not at all based on her alcohol and marijuana use. In assessing Plaintiff's social functioning, Dr. Hill *actually* opined:

> The claimant appears limited in her ability to respond appropriately to supervisors and coworkers within a work setting based on her irritable and aggressive presentation and interaction throughout the clinical interview setting, her uncooperative demeanor, and her report of work history in which the claimant states that she had problems taking direction from supervisors or working with coworkers. The claimant has a history of aggressive behavior and has a history of legal involvement. The claimant reports no positive socialization in her life, other than contact with her mother.

(Tr. 531). Dr. Hill made no mention of Plaintiff's substance abuse in assessing Plaintiff's social functioning limitations. Dr. Hill did mention alcohol and marijuana abuse when assessing Plaintiff's limitations in responding appropriately to work pressures:

> It is not believed that the claimant would likely engage in her ability to problem solve to manage work pressures to the best of her ability *based on her symptoms associated with antisocial personality disorder*. It is noted that the claimant is using

substances daily related to alcohol and almost daily use of marijuana. It is believed that if the claimant were to use substances within a work environment that it would likely further limit her in this area.

(Tr. 532) (emphasis added). However, as highlighted, Dr. Hill primarily based that opinion "on [Plaintiff's] symptoms associated with antisocial personality disorder." *Id*. Dr. Hill recognized Plaintiff's substance abuse issues, but did so to note Plaintiff would be *further* limited in this area if she used substances in the workplace. *Id*.

Aside from misrepresenting Dr. Hill's social functioning opinion, the ALJ's also misstated the nature of Plaintiff's substance abuse. In assigning Dr. Hill's opinion partial weight, ALJ cited: "the claimant's suggest[ion] at that examination that she had reduced her use of these substances." (Tr. 25). This assertion is not entirely grounded in fact. During the consultative examination, Plaintiff told Dr. Hill she drank alcohol "every day", smoked marijuana "every day, 24/7" – later amending her marijuana use estimate to "a couple times a week." (Tr. 526). The "reduction" the ALJ relies on appears to be between Plaintiff's first estimate that she smoked marijuana daily, to her amending to "a couple times per week." *Id*. However, Plaintiff never told Dr. Hill that she reduced her alcohol consumption in any way. *See* Tr. 526.[3]

The ALJ similarly cited the same factually inaccurate rationale to discount the opinions of the State agency psychological consultants noting:

> I gave partial weight to these opinions to the extent that they were consistent with the above residual functional capacity findings. Specifically, I gave less weight to their limitations regarding social functioning because they were based [] partially on her alcohol and marijuana use and the claimant's suggest[ion] at that examination that she reduced her use of these substances (Ex. C5F/5).

---

3. Although the Commissioner argues the ALJ's decision is supported because he did not find Plaintiff's alcoholism to be a severe impairment at Step Two, *see* Tr. 20, an ALJ is still required to consider all impairments – severe and non-severe – at the subsequent steps of the analysis. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009). Here, the ALJ did so, but with the above-cited factual inaccuracies.

11

(Tr. 26). The consultants found Plaintiff markedly limited in her ability to interact appropriately with the public; moderately limited in her ability to accept instruction and respond to criticism from supervisors, get along with coworkers or peers, and maintain socially appropriate behavior. *See* Tr. 115, 128-29. The consultants elaborated, noting Plaintiff "can maintain minimal and only superficial social interaction." (Tr. 115, 129). They found Plaintiff moderately limited in her ability to respond appropriately to changes in the work setting. (Tr. 115, 129). The consultants did not elaborate on this finding, but explained summarily at the end of their reports: "[t]here are severe impairments of a personality disorder and alcohol and cann[abis] use disorders." *Id*. Therefore, it is inaccurate for the ALJ to say the consultant's opinions were based – in any way – on "[Plaintiff's] suggestion at that examination that she reduced her use of these substances." (Tr. 26). Neither offered such a statement.

A decision is supported by substantial evidence "when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *Walters*, 127 F.3d at 528). Thus, the undersigned cannot conclude an RFC is supported by substantial evidence where, as here, the ALJ misstates the evidence cited and the limitations found within the medical source opinions she used to formulate that RFC.

Further problematic, is that the RFC is directly in conflict with the medical source opinions of Dr. Hill and the State agency consultants. For example, Dr. Hill found Plaintiff limited in her ability to maintain persistence and pace due to an antisocial personality disorder diagnosis and Plaintiff's "extremely irritable and aggressive" presentation during the exam. (Tr. 531). The State agency consultants also found Plaintiff moderately limited in her ability to maintain persistence and pace. (Tr. 114-15, 128). The ALJ did not include a persistence and pace restriction in her RFC, nor did she explain this omission. Additionally, Dr. Hill found Plaintiff limited in her ability to

respond appropriately to co-workers and supervisors due to an aggressive personality, her presentation during the exam, and a lack of socialization in her life. (Tr. 531). Similarly, the State agency consultants found Plaintiff moderately limited in this category, recommending "minimal and only superficial social interaction." (Tr. 115, 129). These opinions conflict with the RFC finding that Plaintiff could maintain frequent interactions with supervisors, co-workers, and the public. (Tr. 22). If a medical source's opinion contradicts the ALJ's RFC finding, an ALJ must explain why she did not include the medical source's limitation in his determination of the claimant's RFC. *See* SSR 96-8p, 1996 WL 374184, at \*7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Here, as explained, the RFC finding conflicts with the medical source opinions listed above. This is reversible error.

On remand, the ALJ must reexamine the opinions of Dr. Hill and the State agency consultants, as well as the evidence they cite in support, through a more accurate lens. Reconsideration of these opinions may or may not change the RFC, but that determination is for the Commissioner to make in the first instance, not this Court.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI unsupported by substantial evidence, reverses that decision, and remands under Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

  s/James R. Knepp II  
United States Magistrate Judge